UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARLTON M. MARBURY, | ) | Case No. 5:11CV2156 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| KIMBERLEY CLIPPER, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| | ) | |

  Petitioner, Carlton M. Marbury ("Petitioner"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  He seeks relief for alleged constitutional violations that occurred during his trial in the Summit County, Ohio Court of Common Pleas, where he was convicted of trafficking in cocaine with a major drug offender specification in violation of Ohio Revised Code ("ORC") §§2925.03(A)(2) and 2941.1410 and possession of cocaine with a major drug offender specification in violation of ORC §§2925.11(A) and 2941.1410.  ECF Dkt. #6-2 at 278[1].

  On December 15, 2011, Respondent, Kimberly Clipper, Warden of Grafton Correctional Institution, filed an answer/return of writ.  ECF Dkt. #6.  On May 21, 2012, Petitioner, through counsel, filed a traverse.  ECF Dkt. #8.

  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice.  Since the undersigned recommends dismissal of Petitioner's federal habeas corpus petition in its entirety with prejudice, the undersigned DENIES Petitioner's motion to schedule an oral hearing (ECF Dkt. # 9).

---

[1] Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

## I.      SYNOPSIS OF THE FACTS

The Ninth District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-361 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999).  As set forth by the Ohio Court of Appeals, the facts are:

> On the afternoon of July 9, 2007, a vehicle driven by John Leonard was pulled over for speeding on Interstate 77 south.  Carlton Marbury was the passenger of the vehicle.  Mr. Leonard and Mr. Marbury shared an apartment in Canton and were headed south from Cleveland.
>
> In the weeks preceding the traffic stop, Canton police were conducting surveillance on Mr. Leonard's activities using a global positioning system that had been mounted on his vehicle.  The authorities suspected that Mr. Leonard was supplying drugs to street-level dealers in Canton.  A detective with the Canton Police Department was tracking Mr. Leonard on July 9, 2007, and believed that he was going to Cleveland to pick up drugs to bring back to Canton.  The detective contacted an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("the AFT") working near Cleveland and asked the agent to find and monitor Mr. Leonard, who was in the area with his car.  The agent located Mr. Leonard's vehicle and began following it on Interstate 77 south from Independence, Ohio.  The detective also contacted the Ohio State Highway Patrol and requested that State Troopers along Interstate 77 be on the lookout for Mr. Leonard's car and initiate a stop if any traffic violations occurred.
>
> A trooper observed the vehicle, determined that it was exceeding the speed limit and initiated a traffic stop.  The trooper also had his drug-sniffing dog evaluate the vehicle.  The dog alerted on the vehicle, law enforcement officers searched the car and found nearly three thousand grams, or over six pounds, of cocaine and a bag of marijuana.  Mr. Leonard and Mr. Marbury were arrested and questioned by police.  Their apartment and the residences of some of their friends and family were searched.
>
> Mr. Marbury was charged with felony trafficking of cocaine, felony possession of cocaine and misdemeanor possession of marijuana.  A major drug offender specification was attached to each of the felony charges.  A jury found Mr. Marbury not guilty of possession of marijuana, but was unable to reach verdicts on the remaining charges of trafficking and possession of cocaine.  Upon retrial, another jury convicted Mr. Marbury of the felony charges and the major drug offender specifications.  The trial court sentenced Mr. Marbury to two, mandatory, ten-year sentences in prison, to be served concurrently, and declined to sentence additional incarceration for the major drug offender specification.

ECF Dkt. #6-20 at 379-380.

## II. PROCEDURAL HISTORY

### A. State Trial Court

In its July 2007 term, the Summit County, Ohio Grand Jury indicted Petitioner for: trafficking in cocaine in violation of ORC § 2925.03(A)(2) with a major drug specification under ORC § 2941.1410; possession of cocaine in violation of ORC § 2925.11(A) with a major drug offender specification under ORC 2941.1410; and possession of marijuana in violation of ORC § 2925.11(A). ECF Dkt. #6-2 at 57-58.

On September 24, 2007, the trial court declared a hung jury after the jury found Petitioner not guilty of possession of marijuana but could not reach a verdict on the cocaine trafficking and possession charges with the major drug offender specifications. ECF Dkt. #6-2 at 64. Petitioner was retried on the cocaine charges in 2009 and March 17, 2009, the jury found him guilty on both of the cocaine charges with the major drug offender specifications. ECF Dkt. #6-6 at 65. On April 1, 2009, the trial court sentenced Petitioner to mandatory terms of ten years on each conviction, with the terms to run concurrently, and found it unnecessary to sentence Petitioner to additional prison time for the major drug offender specifications. ECF Dkt. #6-9 at 278-279.

### B. Direct Appeal

Petitioner, through new counsel, appealed his conviction and on September 2, 2009, the Ninth District Court of Appeals granted the State's motion to dismiss the appeal and vacate the imposed sentence because the trial court failed to properly set forth the mandatory nature of the terms of Petitioner's post-release control. ECF Dkt. #6-13 at 311; ECF Dkt. #6-14 at 315. The trial court thereafter resentenced Petitioner, who was represented by different counsel at that time, to the same sentence and included the proper post-release control term. ECF Dkt. #6-15 at 317-318.

### C. Direct Appeal upon Resentencing

Petitioner, through the same counsel as on his first appeal, thereafter appealed his conviction and sentence to the state appellate court and asserted the following assignments of error:

Assignment of Error I

DEFENDANT SUFFERED PREJUDICE DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO MOVE TO DISMISS THE CASE FOR WANT OF SPEEDY TRIAL.

-3-

Assignment of Error II

>DEFENDANT MUST RECEIVE A NEW TRIAL BECAUSE THE JURY RECEIVED TESTIMONY VIOLATIVE OF THE CONFRONTATION CLAUSE AS SET FORTH BY BRUTON V. UNITED STATES WITHOUT OBJECTION, CAUSING PLAIN ERROR AND DEPRIVING DEFENDANT OF HIS RIGHT TO COUNSEL.

Assignment of Error III

>DECLARING A DEFENDANT A MAJOR DRUG OFFENDER IS A JUDICIAL FINDING OF FACT, PURSUANT TO R.C. 2941.1410(B), AND IT WAS PLAIN ERROR FOR THE TRIAL COURT TO NOT USE IT'S[sic] DISCRETION PRIOR TO SENTENCING APPELLANT.

Assignment of Error IV

>DEFENDANT WAS DENIED HIS RIGHT TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNCIL[sic] UNDER THE OHIO CONSTITUTION AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION DUE TO TRIAL COUNSEL'S CUMULATIVE ERRORS INVOLVING THE STATUTORY RIGHT TO SPEEDY TRIAL, THE CONSTITUTIONAL RIGHT TO CONFRONT ONE'S ACCUSER, AND HIS SENTENCING RIGHTS.

ECF Dkt. #6-18 at 332-333.

On December 8, 2010, the state appellate court overruled each of Petitioner's assignments of error and affirmed the judgment of the trial court.  ECF Dkt. #6-20 at 379-391.

### **D**.     **Supreme Court of Ohio**

On January 24, 2011, Petitioner, through appellate counsel, filed a notice of appeal to the Supreme Court of Ohio.  ECF Dkt. #6-21 at 392-393.  In his memorandum in support of jurisdiction, Petitioner pro se asserted the following propositions of law:

>PROPOSITION OF LAW I:

>WHEN A CRIMINAL DEFENDANT'S CASE COULD BE DISMISSED FOR WANT OF SPEEDY TRIAL, BUT COUNCIL[sic] FAILS TO DO SO, IT IS INEFFECTIVE ASSISTANCE OF COUNSEL AS A MATTER OF LAW.

>PROPOSITION OF LAW II:

>TESTIMONY FROM A PROSECUTION WITNESS IMPLYING THAT A CO-DEFENDANT ADMITTED TO THE SAME CRIME ALLEGED AGAINST A DEFENDANT ON TRIAL, VIOLATES THE CONFRONTATION CLAUSE AS EXPLAINED BY BRUTON V. UNITED

-4-

STATES.

ECF Dkt. #6-21 at 394-405.  On April 6, 2011, the Supreme Court of Ohio denied Petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question.  ECF Dkt. #6-24 at 420.

**III.    28 U.S.C. § 2254 PETITION**

On October 12, 2011, Petitioner, through the same counsel he had in his state appeals, filed the instant petition for a writ of federal habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief in that petition:

> **GROUND ONE**:
>
> PETITIONER SUFFERED A DEPRIVATION OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.
>
> **GROUND TWO**:
>
> PETITIONER SUFFERED A DEPRIVATION OF HIS CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER.

*Id.* at 3-7.  On December 15, 2011, Respondent filed a return of writ.  ECF Dkt. #6.  On May 21, 2012, Petitioner filed a traverse  ECF Dkt. #8.

**IV.    PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

**A.    Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

**B.**     **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)     whether the petitioner failed to comply with an applicable state procedural rule;

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground in which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and

-6-

regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

**V**.     **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 well after the act's effective date of April 26, 1996. *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added). In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating

on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*.; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.    Decisions of lower federal courts may not be considered.

B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.    The state court decision may be overturned only if:

1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.    Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.    Findings of fact of the state courts are presumed to be correct. 'The

-9-

> applicant shall have the burden of rebutting the presumption of
> correctness by clear and convincing evidence.⁷

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6ᵗʰ Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6ᵗʰ Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6ᵗʰ Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus
> by a person in custody pursuant to the judgment of a State court, a
> determination of a factual issue made by a State court shall be presumed to be
> correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993). The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6ᵗʰ Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6ᵗʰ Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## VI.    ANALYSIS

### A.    Ground for Relief Number 1-Ineffective Assistance of Counsel

In Ground for Relief Number 1, Petitioner contends that his trial counsel was ineffective because he filed a baseless motion to suppress which ultimately denied Petitioner his right to challenge his speedy trial rights since that motion served to toll the speedy trial clock and his counsel waited until immediately before trial before withdrawing "the baseless motion." ECF Dkt. #1 at 4. Petitioner also asserts that his trial counsel was ineffective in failing to file a motion to dismiss his

case based upon a want of speedy trial under Ohio's speedy trial statute.  ECF Dkt. #8 at 725. Petitioner raises the issue of speedy trial only with regard to the time between his indictment and his first trial.  ECF Dkt. #1 at 4; ECF Dkt. #8 at 4-6.

### 1. "**Baseless" or "Frivolous" Motion to Suppress-Procedural Default**

The undersigned notes that the Ohio appellate court did not separately address the first issue that Petitioner presents in Ground for Relief Number 1, that his counsel was ineffective in filing a "baseless" or "frivolous" motion to suppress, which impacted the running of the speedy trial time in his case.  ECF Dkt. #6-20 at 381-386.  In his federal habeas corpus petition, Petitioner spends the majority of his first ground for relief focusing on the alleged baselessness and/or frivolity of the motion to suppress.  ECF Dkt. #1 at 3-4.  He explains the basis of the motion to suppress as challenging the constitutionality of the motor vehicle stop which led to his drug trafficking indictment and asserts that because he was only a  passenger in the car, "trial counsel should have known that Marbury lacked standing to suppress the stop of a vehicle that was not his and that he was not driving."  *Id.* at 3.  Petitioner further alleges that this "baseless motion...served only to deny Marbury's statutory right to a speedy trial under Ohio law."  *Id*.  Petitioner further laments that the motion to suppress also asserted that law enforcement had no reason to stop the motor vehicle even though it was known that the vehicle was speeding and the car was stopped for speeding.  *Id.* at 4. Petitioner contends that the motion to suppress therefore lacked standing and a factual basis and he avers that "[b]ut for the baseless motion to suppress, Marbury's trial counsel could have moved to dismiss the case for want of speedy trial.  Marbury's trial counsel failed to withdraw the baseless motion until immediately prior to trial."  *Id.*

In Petitioner's traverse before this Court, he elaborates on this first ground for relief by asserting that he suffered the ineffectiveness of trial counsel because (1) trial counsel filed a motion to suppress that was frivolous; (2) his case could have been dismissed for want of speedy trial under Ohio law if his counsel would not have filed this frivolous motion that tolled the speedy trial clock; and (3) his trial counsel failed to protect his rights under the Confrontation Clause, which is the basis of his second ground for relief.  ECF Dkt. #8 at 725-726.

A review of Petitioner's brief to the Ohio appellate court challenging his conviction and resentencing shows that he failed to raise the issue of the ineffectiveness of counsel in filing the allegedly "baseless" or "frivolous" motion to suppress. ECF Dkt. #6-18 at 340. Petitioner captioned his first assignment of error in the appellate brief as "Defendant suffered prejudice due to ineffective assistance of counsel when his attorney failed to move to dismiss the case for want of speedy trial." ECF Dkt. #6-18 at 340. He reviewed the standard for determining the ineffectiveness of counsel and Ohio law on the statutory right to a speedy trial. *Id*. at 340-341. He then asserted that his counsel filed a motion to suppress, but it was "never given hearing, never withdrawn, and never ruled upon." *Id.* at 341. He thereafter conducted a speedy trial calculation in his case and concluded that:

> he suffered from ineffective assistance of counsel when his attorney filed an ethereal motion to suppress, and yet failed to assert his speedy trial rights to dismissal of the case after the expiration of 658 speedy trial days. For these reasons, Marbury's right to effective counsel under the Ohio Constitution and the Sixth Amendment of the U.S.Constitution was violated.

*Id.* at 342. Petitioner's second assignment of error before the Ohio appellate court asserted that trial counsel was ineffective because he failed to timely object to the testimony of a special agent who testified as to his interrogation of the co-defendant in Petitioner's case. ECF Dkt. #6-18 at 342. Petitioner contended that this testimony violated the Confrontation Clause of the United States Constitution as explained by *Bruton v. United States*. 391 U.S. 123 (1968). Petitioner's third assignment of error was unrelated to ineffective assistance of counsel or speedy trial rights, but his fourth assignment of error contended that he received the ineffective assistance of counsel due to cumulative errors committed by counsel as outlined in his preceding assignments of error. ECF Dkt. #6-18 at 346-347.

Upon review of the assignments of error that Petitioner presented in his state appellate brief, it is clear that Petitioner emphasized the impact of the filing of the motion to suppress on the tolling of the speedy trial time rather than any alleged "baselessness" or "frivolity" of the motion itself. The Ohio appellate court confirms this interpretation, as it addressed Petitioner's first assignment of error as alleging the ineffectiveness of counsel in failing to file a motion asserting his speedy trial rights prior to the first and second trials. ECF Dkt. #6-20 at 384-386.

-12-

Under Ohio law, the failure to raise a claim on appeal that appears on the face of the record constitutes a procedural default under the doctrine of res judicata. *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982); *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104, 105 (1967). The Supreme Court of Ohio will not consider constitutional claims that are not raised and preserved in the Ohio Court of Appeals." *Smith v. Warden,* No. 1:09-cv-251, 2010 WL 3075166, at *14 (S.D. Ohio Apr. 14, 2010), citing *State v. Phillips*, 27 Ohio St.2d 294, 272 N.E.2d 347, 352 (1971); *State v. Lynn*, [5 Ohio St.2d 106, 214 N.E.2d 226, 229 (1966).]" *Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir.1985) (quoting *Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir.1982)*, cert. denied*, 460 U.S. 1042, 103 S.Ct. 1439, 75 L.Ed.2d 796 (1983)). Since Petitioner failed to raise the claim of ineffective assistance of counsel in filing a "frivolous" motion to suppress in the Ohio court of appeals, this claim was not preserved for appeal to the Ohio Supreme Court. *Id.*

Moreover, "[d]istrict courts within the Sixth Circuit 'have consistently found Ohio's procedural rule requiring claims to be presented in the lower appellate court prior to being presented to the Ohio Supreme Court to be an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.'" *Smith,* 2010 WL 3075166, at *14, quoting *Shank v. Mitchell*, No. 2:00-CV-17, 2008 WL 4449567, at *43 (S.D.Ohio Sept.30, 2008) (Marbley, J.) (citations omitted). Petitioner has not fairly presented his claim to the Ohio state appellate court and has failed to present to this Court the "the same claim under the same theory" that he presented to the state court. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009). The Sixth Circuit has held that "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir.1998). Issues not fairly presented to the state courts cannot be considered in this Court on federal habeas review. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir.2001).

For these reasons, the undersigned recommends that the Court find that Petitioner has procedurally defaulted Ground for Relief Number One to the extent that he asserts the ineffective assistance of trial counsel in filing a "baseless" or "frivolous" motion to suppress. Petitioner presents

-13-

no cause to excuse this procedural default and does not assert actual innocence.  Accordingly, the Court should decline review of this part of Petitioner's ground for relief.

### 2. **Speedy Trial**

Petitioner also asserts in his first ground for relief that trial counsel was ineffective for failing to file a motion to dismiss his case based upon a violation of his speedy trial rights because counsel filed a motion to suppress that  tolled the speedy trial time clock when he should have foregone filing the "frivolous" motion to suppress and filed the motion to dismiss.  ECF Dkt. #1 at 4; ECF Dkt. #8 at 725-726.  For the following reasons, the undersigned recommends that the Court find that the Ohio appellate court's determination on this issue is not unreasonable or contrary to *Strickland* or the constitutional right to a speedy trial.

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).  Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant

-14-

to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

As to the federal constitutional right to a speedy trial, the Sixth Amendment to the United States Constitution guarantees the accused a speedy trial in all criminal prosecutions. U.S. Const. amend. VI. The right to a speedy trial is "fundamental," and is imposed on the states by the Due Process Clause of the Fourteenth Amendment. *Barker v. Wingo*, 407 U.S. 514, 515, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The Supreme Court said that the states "are free to prescribe a reasonable period consistent with constitutional standards." *Id.* at 523.

The *Barker* Court outlined four criteria by which a court should consider an alleged violation of the constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *Barker*, 407 U.S. at 530; *Norris v. Schotten*, 146 F.3d 314, 326 (6th Cir.), *cert. denied,* 514 U.S. 935 (1998). The *Barker* Court explained that none of the four factors is necessary or sufficient to finding a deprivation of the right to a speedy trial, but they must be balanced with other relevant circumstances. *Id.* at 533. A court assesses the prejudice to the defendant in light of three interests to the defendant: (1) to prevent oppressive pretrial incarceration; (2) to minimize the anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* at 532. In *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), the Court further described the *Barker* factors as "whether [the] delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result."

In the instant case, the Ohio appellate court applied both *Strickland* and *Barker* in its analysis and rejected Petitioner's assertion that the motion to suppress was a nullity and therefore did not impact the running of the speedy trial time clock even though the trial court never held a hearing on the motion and never formally ruled upon it. ECF Dkt. #6-20 at 382-383. The appellate court noted that under Ohio law, a felony must come to trial within 270 days pursuant to Ohio Revised Code § 2945.71(C)(2). ECF Dkt. #6-20 at 382. The court further acknowledged that the time under speedy

-15-

trial can be tolled based upon numerous circumstances, including "[a]ny period of delay necessitated by reasons of a plea in bar or abatement, motion, proceeding, of action made or instituted by the accused[,]" by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion," or by the "trial court's own motion." *Id.*, quoting Ohio Rev. Code. § 2945.72(E), Ohio Rev. Code § 2945.72(H), and *State v. Morgan*, No. 07CA124-M, 2008-Ohio-5530, at ¶ 43.   The appellate court also pointed out that "[t]he failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." ECF Dkt. #6-20 at 384, quoting *State v. Palmer*, 112 Ohio St.3d 457, 860 N.E.2d 1011 (2007), paragraph one of the syllabus.

Before this Court, Petitioner asserts that but for the "frivolous" motion to suppress filed by his counsel, his speedy trial time would not have been tolled and his speedy trial time would have expired and his case would have been dismissed. ECF Dkt. #8 at 726.  However, the Ohio appellate court held:

> We further note that Mr. Marbury has not addressed other tolling events that occurred prior to the first trial. For example, on August 2, 2007, the State filed a demand for discovery. However, the record does not contain evidence of Mr. Marbury's response to the discovery request.  "The failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D). *State v. Palmer,* 112 Ohio St.3d 457, 2007-Ohio-374, at paragraph one of the syllabus.  On October 22, 2007, Mr. Marbury filed a demand for discovery.  This demand also tolled the statutory speedy trial time. *State v. Brown*, 98 Ohio St.3d 121, 2002-Ohio-7040, at ¶26.  In addition, as noted above, the trial date was continued at least once based upon joint request of the State and Mr. Marbury.  In light of all these tolling events that Mr. Marbury has not addressed as well as the issues outlined above concerning the motion to suppress, he has not demonstrated that his speedy trial rights were violated and thus, he has failed to establish that he was prejudiced by his counsel's failure to file a motion to dismiss on speedy trial grounds. *Armstrong* at ¶19 (stating that the appellant bears the burden of demonstrating that counsel was ineffective).

*Id.*  Thus, the Ohio appellate court found that other filings in Petitioner's case served to toll the speedy trial time clock.  *Id.*  The court reasoned that Petitioner could not therefore prove the prejudice prong of the ineffective assistance of counsel analysis from his counsel's failure to file a motion to dismiss his case for a violation of speedy trial rights because he did not show that his

speedy trial rights were violated.  *Id.*

The undersigned recommends that the Court find that the Ohio appellate court's determination was not contrary to or an unreasonable application of federal law.  Petitioner was indicted on July 19, 2007 and brought to trial on September 22, 2008.  ECF Dkt. #6-2 at 57; ECF Dkt. #8 at 726; ECF Dkt. #7-2 at 492.  Accordingly, the over one-year delay is presumptively prejudicial as courts have found that a delay approaching one year is "presumptively prejudicial."  *Doggett*, 505 U.S. at 651-652.  However, as indicated by the Ohio appellate court, a review of the trial court docket shows that a number of tolling events were filed during this period.  The reason for delay is important because it determines the amount of proof that a petitioner must proffer in order to show prejudice. *See United States v. Brown*, 169 F.3d 344, 350–51 (6th Cir.1999) (holding that the Sixth Amendment was violated because a five-year pretrial delay was primarily attributable to the government's negligence).  This inquiry, however, is not a search for a blameless party. The Court is instead concerned with who "is more to blame for that delay." *Doggett*, 505 U.S. at 651, 112 S.Ct. 2686.

The state trial court docket shows that the first relevant filing for speedy trial purposes is the State's filing of a demand for discovery on August 2, 2007.  ECF Dkt. #7-2 at 493.  Petitioner also filed a demand for discovery on October 22, 2007.  ECF Dkt. #7-2 at 493.  Demands for discovery toll the speedy trial clock in Ohio.  *See State v. Brown*, 98 Ohio St.3d 121, 781 N.E.2d 159 (2002).  The speedy trial time clock tolls from the date of the demand for a "reasonable" period of time in order to give parties the opportunity to respond.  *Id.*  The criminal docket does not reveal whether either party responded to the other's request for discovery.  The Ohio Supreme Court has held that it was not an abuse of discretion for a trial court to toll the speedy trial clock for thirty days from the date of service of the State's demand for discovery from a criminal defendant based upon neglect when that defendant did not respond to the State's discovery demand.  *See State v. Palmer*, 112 Ohio St.3d 457, 461-462, 860 N.E.2d 1011 (2007).  Thus, even accepting thirty days as a reasonable time

-17-

for tolling as to only the State's demand for discovery[2], and not counting the filing of the motion to suppress toward any tolling periods, Petitioner's speedy trial clock ran from July 20, 2007, the date that he was indicted, until August 2, 2007, (14 days) the filing date of the State's demand for discovery. The speedy trial time clock tolled from August 3, 2007 through September 3, 2007 due to Petitioner's lack of showing of a response to the State's demand for discovery, and it began running again from September 4, 2007 through October 21, 2007 (48 days), the date that Petitioner filed a demand for discovery. ECF Dkt. #7-2 at 492. The clock continued to run from October 22, 2007 until April 21, 2008 (183 days), the date that Petitioner's case was first set for trial. ECF Dkt. #7-2 at 492. The amount of days that had run off of the speedy trial time clock at this point totaled 245 days.

However, the trial did not occur on the scheduled date of April 21, 2008, and the docket does not reveal to whom the continuances could be attributed which resulted in Petitioner not going to trial until September 22, 2008. The first scheduled trial date of April 21, 2008 and the subsequent rescheduling of the trial from April 21, 2008 to July 7, 2008 both include the signatures of Petitioner, his attorney, the prosecuting attorney and the trial court. ECF Dkt. #7-2 at 492, Docket #s 33 and 34 in Summit County Case Number CR-2007-07-2265 B. The next two trial reschedulings came in the form of journal entries from the court continuing the trial from July 7, 2008 to September 4, 2008 and from September 4, 2008 to September 22, 2008. ECF Dkt. #7-2 at 492, Docket #s 31 and 32 in Summit County Case Number CR-2007-07-2265 B.

Without evidence that any of these continuances were attributable solely to the State, the undersigned recommends that th Court find that the Ohio appellate court's determination that Petitioner had not demonstrated a speedy trial violation was not contrary to or an unreasonable

---

[2] Here, the undersigned takes even a more liberal approach to the tolling provision in Ohio law by applying the 30-day "reasonable" tolling time period only to Petitioner's lack of showing of a response to the State's demand for discovery. For the sake of argument, the undersigned applies no tolling period or "reasonable" tolling time for the State to respond to Petitioner's demand for discovery since no showing was made that the State responded to that demand. Just as a failure to demonstration that Petitioner responded to the State's request for discovery conferred a tolling benefit to the running of the speedy trial time clock, the undersigned here even conferred a benefit of non-tolling to Petitioner for the State's failure to show that it responded to Petitioner's demand for discovery.

application of federal law.  Consequently, the undersigned also recommends that the Court find that the Ohio appellate court's determination that Petitioner could not establish the ineffective assistance of counsel was also not contrary to or an unreasonable application of federal law.

### B.    Ineffective Assistance of Counsel - Confrontation Clause

Petitioner also contends that his trial counsel was ineffective in failing to protect his right to confront his accusers under the Confrontation Clause when counsel failed to object to the testimony of an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") during his second trial.  ECF Dkt. #1 at 5-6; ECF Dkt. #8 at 728-729.

The Ohio appellate court rejected this assertion, holding the following:

> Next, Mr. Marbury contends that trial counsel was ineffective because counsel failed to object to the admission of improper testimony at Mr. Marbury's March 2009 trial on the felony drug charges.  Mr. Marbury argues that a statement testified to by the agent from the ATF violated Mr. Marbury's right to confront witnesses against him pursuant to the rule announced in *Bruton v. United States* (1968), 391 U.S. 123.  In that case, Bruton was tried with a co-defendant for armed postal robbery. Id. at 124.  At trial, a postal inspector testified that while he was interrogating the co-defendant, the co-defendant admitted that he and Bruton committed the robbery. Id.  The Supreme Court held that a curative jury instruction is insufficient to remedy the threat posed to a defendant's right to confront witnesses when statements that a co-defendant made during interrogation inculpating the defendant are admitted at the defendants' joint trial. Id. at 126.  Rather, the appropriate remedy is to reverse the conviction and remand for a new trial.

> Mr. Marbury quotes the following statement in his brief: "'* * * he was going to Cleveland, possibly to purchase drugs to take back to Canton for sale.'"  According to Mr. Marbury, the ATF agent testified that Mr. Leonard, Mr. Marbury's co-defendant, made the statement to the agent while the agent was interrogating Mr. Leonard after his arrest.  Further, that Mr. Leonard made the statement to explain his trip to Cleveland on July 9, 2007.  Mr. Marbury interprets this statement as implicating him in the crime.

> Upon examination of the trial transcript, it is clear that the agent attributed the above-quoted statement to the detective with the Canton police, not to Mr. Leonard.  Further, the agent made the statement during his testimony when he was explaining how he became involved with the surveillance of Mr. Leonard on July 9, 2007.  The agent stated that he received a call from the detective who had been working on the investigation of Mr. Leonard and that the detective told him that he suspected that Mr. Leonard was travelling to Cleveland to buy drugs to sell in Canton.  Because the agent was not testifying to a statement made by Mr. Marbury's co-defendant, *Bruton* does not apply.  Because the aforementioned testimony does not implicate *Bruton*,

-19-

> Mr. Marbury cannot demonstrate prejudice and therefore has failed to establish that his counsel was ineffective for failing to object to the testimony.

ECF Dkt. #7-3 at 501-502.  Petitioner contends that this testimony implied "that Marbury's co-defendant John Leonard confessed to transporting drugs for sale."  ECF Dkt. #8 at 728.

In *Bruton v. United States*, the United States Supreme Court held that the Sixth Amendment right to confrontation is violated when a court admits the confession of a codefendant which also inculpates a joint defendant at their joint trial.  391 U.S. 123, 127, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

The undersigned recommends that the Court find that the Ohio appellate court's holding that *Bruton* does not apply to the agent's testimony above was not contrary to or an unreasonable application of *Bruton* or *Strickland*.  The following portion of the transcript that even Petitioner cites to confirms that ATF Special Agent Hopkins was testifying to information given to him by Sergeant Dittmore from the Canton Police Department and not from John Leonard:

> Q:  And on July 7 of 2000 - - - excuse me, July 9th of 2007, did you get - - how did you get involved in this case?
>
> A:  I was in the Cleveland Group II office on Rockside Road in Independence. I received a call from Sergeant Dittmore in the Canton Police Department. He's a policeman that I worked with routinely. He notified me that via a GPS tracker, he was monitoring the whereabouts of an individual who was a suspect in a narcotics trafficking investigation of his.
>
> That subject, John Leonard, he informed me, was northbound on State Route 77. It looked like he was going to Cleveland, possibly to purchase drugs to take back to Canton for sale.
>
> He gave me a description of the vehicle. It was a 2002, I believe, GMC Denali. It was black on the top and silver on the bottom, and it had an Ohio dealer plate on it, dark-tinted windows. He asked me if I could locate that vehicle since I was in the vicinity. He thought that it was in the Rockside Road/State Route 77 area, which is right where our office is.

ECF Dkt. #8-5 at 847-848.  Based upon this transcript, the undersigned recommends that the Court find that the Ohio appellate court's determination that no *Bruton* violation occurred is not contrary to or an unreasonable application of federal law. Without a *Bruton* violation, the undersigned further

-20-

recommends that the Court find that the Ohio appellate court's determination that no ineffective assistance of counsel occurred is also not contrary to or an unreasonable application of federal law.

Petitioner also asserts before this Court that a *Bruton* violation occurred because the pages of the trial transcript at "page 110, lines 14-17 show the prosecutor eliciting testimony from a police investigator that co-defendant John Leonard was 'Mirandized' and page 111, lines 3-7 show that the investigator gave an affirmative answer when the prosecutor asked if "Mr. Leonard, who is serving time in the penitentiary for these drugs, he confirmed that's when he got these drugs, isn't it?" *Id.* at 728.  Petitioner asserts the ineffective assistance of counsel in not objecting to this testimony as violative of *Bruton* and contends that the trial court recognized the inadmissibility of the statements as the court "invoked the holdings of *United States v. Bruton* and informed the prosecutor at sidebar that the officer's testimony is 'absolutely inadmissible' and stated the only issue is 'whether or not it's plain error.' [citation omitted] The trial court gave a curative instruction and refused to declare a second mistrial."  ECF Dkt. #8 at 728.

As to the trial court's "recognition" of admissibility, the Ohio appellate court found:

> Mr. Marbury also asserts that the trial court found that the agent's testimony concerning the purpose of Mr. Leonard's trip to Cleveland was "'absolutely inadmissible.'" However, the statement of the trial court quoted by Mr. Marbury relates to other testimony that Mr. Marbury has not challenged on appeal.

ECF Dkt. #6-20 at 386-388. As found by the Ohio appellate court, Petitioner did not raise any other *Bruton* error concerning a codefendant's testimony except for the above excerpt from Agent Hopkins concerning information relayed to him by the Canton Police Department.  *Id.*

Before this Court, Petitioner challenges the testimony of ATF Agent Hopkins as analyzed above with regard to Sergeant Dittmore's statement to Agent Hopkins that John Leonard "was going to Cleveland, possibly to purchase drugs to take back to Canton for sale."  ECF Dkt. #1 at 6. However, in his traverse, Petitioner challenges the testimony of Ohio State Highway Patrolman Menges and presents a *Bruton* violation with regard to his testimony that "when asked why he was driving the vehicle to Canton, the co-defendant John Leonard told him "***he was going to Cleveland, possibly to purchase drugs to take back to Canton for sale."  ECF Dkt. #8 at 727.

Petitioner thereafter cites to the trial transcript at page 97, lines 2-16, page 110 at lines 14-17, and page 111 at lines 3-7 indicating that his counsel failed to object to this testimony and the trial court invoked *Bruton* and "informed the prosecutor at sidebar that the officer's testimony is 'absolutely inadmissible' and stated the only issue is 'whether or not it's plain error." *Id*. at 728.

In his brief to the Ohio appellate court, Petitioner only raised the issue of a *Bruton* violation and his counsel's failure to object on the basis of *Bruton* with regard to the testimony of Special Agent Hopkins. *See* ECF Dkt. #6-18 at 342. In addition to the testimony of Special Agent Hopkins quoted above, Petitioner also cited to pages 185 and 190 of the trial transcript in which the trial court "admitted that the testimony was 'absolutely inadmissible." *Id*. at 343. The testimony of Ohio State Highway Patrol Officer Menges is not mentioned in Petitioner's assignments of error before the Ohio appellate court.

Accordingly, the undersigned recommends that the Court find that Petitioner has procedurally defaulted this ground for relief to the extent that he attempts to challenge the testimony of Ohio State Highway Patrol Officer Menges since he failed to raise this issue before the Ohio courts, presents no cause for failing to raise the issue or resulting prejudice, and fails to argue actual innocence.

Moreover, as to challenging Special Agent Hopkins' testimony and relying upon the trial court's ruling regarding the testimony being "wholly inadmissible," the Ohio appellate court correctly found that the trial court's finding regarding a potential violation of *Bruton* related to other direct testimony and not the information that Special Agent Hopkins testified to as being received from Sergeant Dittmore, as asserted by Petitioner. Both in his Ohio appellate brief and his federal petition for habeas corpus, Petitioner cites to page 185 of the trial transcript for the assertion that the trial court found Special Agent Hopkins' testimony "wholly inadmissible." ECF Dkt. #1 at 6; ECF Dkt. #6-18 at 343. However, the relevant portion of the trial transcript cited to by Petitioner states the following:

> THE COURT: This morning, Mr. Madison has raised an issue concerning a statement made yesterday by Special Agent Thomas Hopkins. The statement was in response to a question by Mr. LoPrinzi, and the testimony elicited was that Hopkins had been present when Leonard, the co-defendant, was interrogated. And the statement he made, he says the defendant Leonard said he got the drugs that day at the Bob Evans.

-22-

Today, Mr. Madison raised the issue as to whether or not that is plain error. For the record, Mr. Madison did not object to the question at the time that it was asked.

It is absolutely inadmissible.  There's no question it's inadmissible.  So the next question I have is whether or not it's plain error, and that's what I'm working on.  Let me go through my analysis, which is what I've been doing while you all have been questioning the state trooper.

ECF Dkt. #6-8 at 184-186.  The trial court thereafter analyzed the issue after reviewing the transcript of the testimony and found that it would not grant a mistrial under *Bruton* but would give a curative instruction as to the statements "made by John Leonard" to Special Agent Hopkins.  *Id.* at 258.

Accordingly, as found by the Ohio appellate court, the trial court's finding of inadmissibility under *Bruton* was related not to Special Agent Hopkins' testimony as to the information that he received from Sergeant Dittmore, but was from Hopkins' testimony from when Hopkins interrogated Mr. Leonard.

For these reasons, the undersigned recommends that the Court find no merit to Petitioner's second ground for relief.

## VII.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.  Since the undersigned recommends that the Court dismiss Petitioner's federal habeas corpus petition, the undersigned DENIES Petitioner's motion to schedule an oral hearing.  ECF Dkt. #9.

DATE: December 18, 2012                          */s/ George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).